UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VICTOR SOWELL,

                              Plaintiff,

                                                                       <u>DECISION AND ORDER</u>

                                                                           07-CV-6355L

                  v.

P. CHAPPIUS, et al.,

                              Defendants.
_____

      Plaintiff, Victor Sowell, appearing *pro se*, commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS") alleges that his constitutional rights were violated in 2006 and 2007, while plaintiff was confined at Southport Correctional Facility. In general, all of plaintiff's claims in this action stem from an alleged assault against him by three correction officers on June 18, 2006.

      Plaintiff has sued a number of defendants, most of whom were, at all relevant times, employees of DOCS. Three of the defendants, Deputy Superintendent Paul Chappius, Sergeant J. McKeon, and Correction Officer Jeffrey Robinson, have moved to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Another defendant, Mark Gibson, M.D., who has answered the amended complaint, has moved for judgment on the pleadings under

Rule 12(c).[1]  The remaining nine defendants, all of whom have answered the complaint, have not filed any dispositive motions at this time.

**DISCUSSION**

**I. Motions to Dismiss:  General Standards**

The standards applied to a motion to dismiss under Rule 12(b)(6) motions and to a motion for judgment on the pleadings under Rule 12(c) are essentially the same.  *See Henry v. Lempke*, ___ F.Supp.2d ___, 2010 WL 299496, at *1 (W.D.N.Y. 2010).  Under either rule, the "court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant."  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

Nonetheless, "a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

Thus, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."  *Id.* at 570.  A "plausible" entitlement to relief exists when the allegations in the complaint move the plaintiff's claims across the line separating the

---

[1]Plaintiff filed an amended complaint on September 24, 2008.  Dkt. #77.  For the sake of convenience, all future references in this Decision and Order to the "complaint" will be understood to refer to the amended complaint.

"conclusory" from the "factual," and the "factually neutral" from the "factually suggestive." *Id.* at 557 n. 5.

"[T]his plausibility standard governs claims brought even by *pro se* litigants." *Robles v. Bleau*, No. 9:07-CV-0464, 2008 WL 4693153, at *5 (N.D.N.Y. Oct. 22, 2008) (citing *Jacobs v. Mostow*, 271 Fed.Appx. 85, 87 (2d Cir. 2008), and *Boykin v. KeyCorp*, 521 F.3d 202, 215-16 (2d Cir. 2008)). At the same time, however, the Court is mindful that even after *Twombly*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin*, 521 F.3d at 214. Nevertheless, all pleadings, *pro se* or otherwise, must contain enough factual allegations to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007)) (additional internal quotation marks omitted).

## II. Application to this Case

### A. Defendant Chappius

In his third claim, plaintiff alleges that defendant Chappius, the Deputy Superintendent of Security at Southport during the period in question, "condoned" the alleged assault on June 18, 2006. Plaintiff bases that assertion on his allegation that he wrote to Chappius following the assault, complaining that the video security camera in the area where the assault occurred was placed in such a way that the officers who assaulted plaintiff had been able to use their bodies to block the camera's view of what was happening. Plaintiff also complained to Chappius that the video recording of the alleged assault was poor and marred by "tracking," which in plaintiff's opinion indicated that

someone had tampered with the camera. Plaintiff alleges that Chappius did nothing in response to these complaints. Dkt. #77 ¶¶ 44-57.

These allegations fail to state a claim against Chappius. For one thing, there is no suggestion in the complaint that Chappius knew or should have known, *before* the alleged assault took place, that the placement of the video camera posed a threat to plaintiff's safety. At most, all that plaintiff's allegations show is that the officers who committed the alleged assault were aware of the presence of the camera, and that they purposely blocked the view of the camera when carrying out the assault. *See Elder-Keep v. Aksamit*, 460 F.3d '979, 987 (8th Cir. 2006) (plaintiff failed to show how city's policy, which allowed only officers trained in the use of recording equipment to operate it, "caused" officer's alleged assault on arrestee, since videotape of the incident "could not have prevented or caused the assault").

Chappius's failure to make any changes concerning the camera after the alleged assault also fails to provide a basis for a claim against him. Repositioning the camera after the alleged assault would not have remedied the violation of plaintiff's rights, and although plaintiff alleges that he "lived in fear" following the assault, in part because of his belief that the officers knew about the limitations of the video system, there is no indication that any further incidents of this type did occur while plaintiff remained at Southport.[2]

Finally, plaintiff's conclusory allegation that Chappius failed to adequately supervise these officers to prevent the assault from occurring in the first place is utterly conclusory and unsupported

---

[2]According to the latest information on the docket sheet and on the DOCS Inmate Lookup website, http://nysdocslookup.docs.state.ny.us, plaintiff is now confined at Orleans Correctional Facility. That fact also renders moot plaintiff's claim for injunctive relief in which he seeks changes to the placement or operation of the security cameras at Southport.

by any factual allegations. *See Crump v. Ekpe*, No. 9:07-CV-1331, 2010 WL 502762, at *16 (N.D.N.Y. Feb. 8, 2010) (citing *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009)). In short, there is no indication of any wrongful behavior on the part of Chappius, and no facts are alleged in the complaint that could show his personal involvement in the underlying events. *See Kornegay v. State of New York*, ___ F.Supp.2d ___, 2010 WL 27867, at *1-*2 (W.D.N.Y. 2010).

**B. Defendants McKeon and Robinson**

Plaintiff's claim against defendants McKeon and Robinson is that they jointly wrote and issued a false misbehavior report against plaintiff, in order to cover up for the officers who had assaulted plaintiff. In other words, McKeon and Robinson allegedly attempted to make it seem as if plaintiff, not the other officers, was the wrongdoer. Dkt. #77 ¶¶ 11-12.

A "prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986)). "Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as 'retaliation against the prisoner for exercising a constitutional right.'" *Cusamano v. Sobek*, 604 F.Supp.2d 416, 471-72 (N.D.N.Y. 2009) (quoting *Boddie*, 105 F.3d at 862).

In accordance with those principles, courts have dismissed claims alleging the issuance of false misbehavior reports as part of a "coverup" attempt. *See, e.g., Cusamano*, 604 F.Supp.2d at 472; *Nelson v. Michalko*, 35 F.Supp.2d 289, 294 (W.D.N.Y. 1999); *James v. Coughlin*, 13 F.Supp.

403, 410 (W.D.N.Y. 1998). Plaintiff's allegations, then, provide no basis for a constitutional claim against defendants McKeon and Robinson, and his claims against them are dismissed.

**C. Defendant Gibson**

Plaintiff alleges that following the assault on June 18, 2006, he was taken to Arnot Ogden Medical Center, where he was seen and treated by Dr. Mark Gibson, an orthopedic surgeon. Plaintiff alleges that Dr. Gibson failed to provide him with adequate medical care in a number of respects.[3]

To show that the medical treatment that he received from Dr. Gibson was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, plaintiff must show that defendant's actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)). *See also Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) ("A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'") (quoting Chance, 143 F.3d at 702). Among the relevant factors for determining whether a serious medical need exists are "[t]he existence of an injury that a reasonable doctor or patient would find

---

[3]There is no indication in the complaint that Dr. Gibson was employed by, or had any contractual relationship with DOCS, or that he could otherwise be considered a state actor for purposes of § 1983. *See Young v. Smith*, No. 07-CV-6312, 2009 WL 3733048, at *4 (W.D.N.Y. Nov. 5, 2009). Dr. Gibson's motion, however, is based solely on plaintiff's failure to make out a valid Eighth Amendment claim. Since I concur with defendant that plaintiff's claim would fail in any event, it is unnecessary for the Court to consider the state-actor issue.

important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (internal quotation marks omitted).

As to the "deliberate indifference" component, the Supreme Court explained in *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991), that this standard includes both an objective and a subjective component. With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective element, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights. *Id.* To establish deliberate indifference, therefore, plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain. *See id.* at 299; *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991); *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir. 1992).

The Court in *Estelle* also cautioned that mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105-06. It is clear, then, that allegations of malpractice alone do not state a constitutional claim. *Id.* at 106 n. 14; *Chance*, 143 F.3d at 703-04; *Ross*, 784 F.Supp. at 44.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion").

To survive a motion to dismiss, then, plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," under the standards recited above. *Hayden v. Paterson*, ___ F.3d ___, 2010 WL 308897, at *7 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009)). *See also Burton v. Lynch*, ___ F.Supp.2d ___, 2009 WL 3286020, at *8 (S.D.N.Y. 2009) ("To sufficiently plead a claim of deliberate indifference, Plaintiff must allege facts showing both an objective and a subjective element"); *Williams v. Carbello*, ___ F.Supp.2d ___, 2009 WL 3241563, at *3 (S.D.N.Y. 2009) ("A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Thus, to state a § 1983 claim, Williams must allege that Curbelo knew of and disregarded an excessive risk to his health or safety").

Plaintiff has failed to meet that standard here. Even accepting the truth of plaintiff's allegations, it is clear that Dr. Gibson did provide him with some treatment, and that he did not act out of any subjective desire to cause plaintiff pain. Plaintiff has alleged that he was dissatisfied with the treatment that he received, and that it was not as effective as he would have liked, but those allegations do not make out a valid Eighth Amendment claim. At most, plaintiff has alleged that

defendant was negligent in his treatment of his injuries. Again, that is not enough to give rise to a constitutional violation.

## CONCLUSION

The motions to dismiss filed by defendants Chappius, McKeon and Robinson (Dkt. #14 and #102), and the motion for judgment on the pleadings filed by defendant Gibson (Dkt. #39) are granted, and plaintiff's claims against those four defendants are dismissed in their entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       February 25, 2010