**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**
_____

**VICTOR SOWELL,**

                **Plaintiff,**　　　　　　**DECISION AND ORDER**
  **v.**　　　　　　　　　　　　　　　　　**07-CV-6355**

**PAUL CHAPPIUS, et al.,**

                **Defendants.**
_____

## Preliminary Statement

Currently pending before the Court are plaintiff's motions to compel (Dockets ## 121, 124). By Order of Judge David G. Larimer, dated April 17, 2008, all pretrial motions excluding dispositive motions have been referred to me pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket # 30).

## Relevant Facts

In his Amended Complaint, plaintiff alleges that on June 18, 2006, while confined at the Southport Correctional Facility, he was tortured and assaulted by defendants Corrections Officers Weed, Harris and Flynn. Plaintiff contends that as a result of the alleged assault, he suffers constant, severe pain. Plaintiff alleges that defendants Nurse Practitioner Northrop and the Arnot Ogden Medical Center acted with deliberate indifference to his medical needs and repeatedly denied him adequate medical care with respect to the injuries he sustained as a result of the June 18, 2006 assault. Plaintiff also alleges that he was deprived of fair disciplinary hearings. See Amended Complaint (Docket # 77).

On March 26, 2009, this Court issued a Decision and Order (Docket # 111) directing counsel for the DOCS defendants to supplement their discovery responses. Thereafter, counsel for the DOCS defendants filed a supplemental affidavit (Docket # 119) setting forth her compliance with the Court's Order. Simultaneous with the filing, DOCS counsel submitted to the Court for *in camera* review (1) hundreds of pages of documents, including the Inspector General's ("IG") file and report, and (2) several cassette tapes. Some of the documents submitted for *in camera* review are documents taken from the defendant Weed's personnel file. Defense counsel argues that although encompassed by the Court's 2009 Order, the documents should not be produced "at this stage of the proceedings." The tapes submitted for *in camera* review are tapes containing audio recordings of two separate but related disciplinary hearings involving the plaintiff.[1] Defense counsel argues that the tapes should not be disclosed on grounds of institutional safety and security. Institutional safety and

---

[1] As alleged by plaintiff in his Complaint, in 2005 Sowell was subject to a disciplinary proceeding regarding allegations that he deliberately disseminated the social security numbers of prison personnel to "a person on the outside with instructions to create [fraudulent] credit card accounts." See Amended Complaint (Docket # 77) at ¶ 1. Sowell was found guilty of several charges, but this finding was reversed by defendant Selsky who ordered a re-hearing. A rehearing was conducted by defendant Escrow in 2006. Escrow made findings of guilt which were eventually affirmed by Selsky. Of the tapes submitted to the Court for *in camera* review, tapes marked 726, 726A, 726B and 726C were tapes made in connection with the 2005 hearing and tapes marked "H", "I" and "J" were made in connection with the 2006 hearing.

2

security concerns are also relied on by counsel to oppose release of certain portions of the IG file and report.

## Discussion

**I. Plaintiff's First Motion to Compel (Docket # 121)**

Prior Complaints and/or Grievances Against Defendants: As noted in my previous decision, prior complaints made against the defendants, whether substantiated or not, are discoverable in § 1983 civil rights actions so long as the complaints are similar to the constitutional violations alleged in the complaint or are relevant to the defendant's truth or veracity. Chatman v. Felker, No. CIV S-03-2415 JAM KJM P, 2009 WL 173515, at *5-6 (E.D. Cal. Jan. 23, 2009); Session v. Rodriguez, No. 3:03CV0943 (AWT), 2008 WL 2338123, at *2 (D. Conn. June 4, 2008); Cox v. McClellan, 174 F.R.D. 32, 34 (W.D.N.Y. 1997). In response to the Court's March 26th Order which directed defense counsel to "file an affidavit with the Court confirming that a good faith investigation has been conducted into relevant prior complaints and disclosing the result of that investigation," defense counsel filed a Declaration therein including the results of her investigation.

I have reviewed defense counsel's Declaration and the Exhibits attached thereto and find that they adequately respond to the Court ordered investigation into prior complaints and grievances. As to the materials from defendant Weed's personnel file submitted for *in*

3

*camera* review (Exhibits "B", "C", "D", "E" and "F"), I agree with Weed that the documents, although relevant, need not be disclosed at this juncture of the litigation. The *in camera* material submitted with respect to defendant Weed generally consists of impeachment materials that may have potential use with respect to the trial testimony of Weed. A final determination as to their probative value and admissibility is best left to the trial judge, should this matter proceed to trial. Accordingly, Weed's request to delay production of the material to *pro se* plaintiff until the trial judge has had the opportunity to consider the issue in an *in limine* motion is **granted**.

Confidential Hearing Tapes: As discussed earlier, defense counsel has submitted for *in camera* review several "confidential" hearing tapes at issue, as well as transcripts of the 2006 Tier III hearings. Defendants assert that the confidential hearing tapes and transcripts should not be disclosed to plaintiff based on the law enforcement privilege, security and safety concerns. The confidential hearing tapes and transcripts contain testimony from confidential interviews conducted by the Commissioner Hearing Officer regarding the investigation conducted by the Inspector General's Office, the Brooklyn District Attorney's Office and the New York State Police in connection with IG File # 03-0366. The tapes and transcripts contain confidential information, including names and other personal information of confidential informants,

4

witnesses and victims, and their statements. The IG file and hearing tapes have no substantive relevance to plaintiff's claims of being subjected to excessive force on June 18, 2006. Their only possible relevance would be in relation to plaintiff's claim that he was denied due process and subjected to false disciplinary charges.

The fact that plaintiff was not present during a portion of his disciplinary hearing is not a due process violation per se. An inmate involved in a disciplinary hearing does not enjoy the same right to confront witnesses that a defendant in a criminal trial does. See United States v. Abuhamra, 389 F.3d 309, 325-26 (2d Cir. 2004). A hearing officer has substantial discretion to receive evidence *ex parte* outside of the presence of the inmate. See Wolff v. McDonnell, 418 U.S. 539, 565-67 (1974). "A hearing officer is not required to disclose a confidential informant's testimony to an accused inmate in a disciplinary hearing." Edmonson v. Coughlin, 21 F. Supp. 2d 242, 252 (W.D.N.Y. 1998). Similarly, a court can impose limits on a *pro se* plaintiff's access to information that may, in the hands of a prisoner, pose a threat to institutional safety and security. See, e.g., Delacruz v. Bennett, No. 03-CV-6455L, 2006 WL 1389770, at *2 (W.D.N.Y. May 19, 2006).

Based on the foregoing, and after review of the hearing transcripts and tapes, I find that due to the nature of the information contained therein, the confidential hearing tapes and

5

transcripts pertaining to the 2006 Tier III hearing need not be provided to *pro se* plaintiff based on considerations of institutional safety and security. Accordingly, Sowell's motion to compel production of these hearing tapes marked "H", "I" and "J" (and the corresponding transcripts) is **denied**.

IG File # 03-0366 and Cassette Hearing tapes ## 726, 726A, 726B and 726C: The documentary materials concern the investigation conducted by DOCS's Office of the Inspector General into plaintiff's involvement with the unauthorized disclosure and subsequent use of private data and information belonging to DOCS personnel. As a result of the investigation, the IG issued a report which has been disclosed to plaintiff in redacted form. In support of their application to have certain portions of the IG report remain confidential, defendants have submitted the Declaration of Vernon Fonda, Director of Operations for the Office of the Inspector General. After reviewing the Fonda Declaration and the redacted disclosure of IG material made to plaintiff after I issued my 2009 Order (Docket # 111), I determine that defendants have complied with my Order. The redactions are appropriate given the legitimate concerns set forth in the Fonda Declaration. Moreover, the redacted information does not prevent plaintiff from making use of the IG Report in preparing for trial.

On May 27, 2009, defendants also submitted to the Court for *in camera* review the four audio cassette hearing tapes made in

connection with the 2005 Tier III hearing. I determine that one of the tapes (726C) should not be disclosed for the reasons set forth in the Fonda Declaration. However, it appears that tapes marked 726, 726A and 726B are hearings where the plaintiff was present. If that is the case, the reason for keeping the tapes confidential escapes the Court. Accordingly, as to these three tapes (726, 726A and 726B), within **two weeks** from entry of this Decision and Order, defense counsel shall either disclose the tapes or file a supplemental affidavit specifically explaining the reason for non-disclosure.

Identity of Cadre Workers Present on Third Floor A Block on June 18, 2006: In its March 2009 Decision and Order (Docket # 111), the Court directed defense counsel to provide the Court with an affidavit explaining why the identity of the cadre workers who were present on the Third Floor A Block on June 18, 2006 is unknown. On May 27, 2009, in compliance with the Court's direction, defense counsel filed a Declaration in which she attached the Declaration of John Colvin, Deputy Superintendent of Security at Southport Correctional Facility, who explained why the identity of the specific cadre workers is unknown. See Declaration of Maritza Buitrago, Esq. (Docket # 119) at ¶¶ 26-28; see also Exhibit "P" annexed to Docket # 119. In his Declaration, Colvin explains that the cadre workers' identities are unknown because

> [I]t is the routine practice that names of individual inmates working as cadre porters or where they are

7

> working are not written down it [sic] the cell block unit
> log... Cadre porters are not required to sign up
> anywhere, they just hand in their identification card to
> the floor officer, who holds on to the card until the
> porters are done for the day, at which the time the cards
> are returned to the cadre porters. Other than the log
> book provided to plaintiff, the only other record that is
> kept concerning the cadre porters is the weekly wage time
> sheet, which does not specify where the inmates were
> working at any specific time but indicates by check marks
> the days when they worked.

See Declaration of John Colvin annexed as Exhibit "P" to the Declaration of Maritza Buitrago, Esq. (Docket # 119) at ¶ 6. Colvin maintains that for these reasons "DOCS is unable to provide the identity of the specific cadre workers assigned to A Block Third Floor on June 18, 2006." See id. at ¶ 8.

Defendants cannot be compelled to produce information that they do not possess. Accordingly, the Court finds that defendants have sufficiently complied with the Court's March 26th Order. The Court orders defense counsel, however, to re-file and serve plaintiff with a copy of the weekly wage time sheet for cadre workers at A Block on June 18, 2006 which was supposed to be attached to John Colvin's Declaration.

DOCS Directive # 4943: With the instant motion, plaintiff seeks production of DOCS Directive # 4943. Plaintiff previously sought production of Directive # 4943 in his prior motion to compel (Docket # 53), and the Court denied his request in its Decision and Order dated March 26, 2009 (Docket # 111). Accordingly, since the Court has already decided this issue, the Court hereby **denies**

plaintiff's motion to compel Directive # 4943.

II. **Plaintiff's Second Motion to Compel**

With plaintiff's second motion to compel (Docket # 124), plaintiff requests that the Court "order the disclosure of all information concerning the x-rays" that were taken in connection with the June 18, 2006 incident. The Court addressed the x-ray issue in its March 26, 2009 Decision and Order (Docket # 111). Specifically, the Court relied on Arnot Ogden Medical Center's assertion that it had already provided plaintiff with "one copy each of the eight x-rays taken: two on June 18, 2006, and two on November 9, 2006, and four comprising the June 18, 2006 CAT scan ... plaintiff has now been provided with every page of any medical record related to his treatment at Arnot Ogden Medical Center, including copies of all radiology reports stemming from all x-rays taken and copies of the x-ray film as well" (see Affidavit of Denise A. Perry annexed to Docket # 57 at ¶¶ 6-7). Accordingly, the Court denied that portion of plaintiff's motion that sought the production of x-rays.

On April 27, 2009, the Court held a telephone conference with plaintiff and defense counsel. During that conference, the Court directed defense counsel to ascertain from Wende Correctional Facility the location of each x-ray, a description of what each x-ray says and the date of each x-ray. On July 15, 2009, defense counsel filed a Declaration therein listing the requested

information.  See Declaration of Maritza Buitrago, Esq. (Docket # 122).  Defense counsel also informed the Court that on June 4, 2009, while at Wende Correctional Facility, she "personally reviewed plaintiff's X-Ray Folder and obtained, upon request, copies of reports contained therein" which she then provided to plaintiff.  See id. at ¶ 7.  In response to the instant motion, defendants assert that the x-ray technician at the Wende Correctional Facility has confirmed "that the x-rays and the attached narrative records" were "in fact, reviewed by the plaintiff in October 2008."  See Reply Affirmation of Thomas J. Kidera, Esq. (Docket # 128) at ¶ 7.

Based on the foregoing I find that plaintiff has been provided access to all of the x-rays in defendants' possession with respect to the June 18, 2006 incident.  Accordingly, plaintiff's motion to compel (Docket # 124) is **denied**.

### III.  Appointment of Counsel:

Early in this case plaintiff moved for the appointment of counsel which motion was denied without prejudice (Docket # 76). In light of the developing complexity of this case and the state defendants' need for substantial *in camera* submissions to be made to the Court, I determine that appointment of counsel is now warranted.  Accordingly, by separate order I will be appointing pro bono counsel to represent Sowell.  Upon appointment, counsel may

consider asking the Court to revisit the issue of redactions and the need for confidentiality, particularly if assigned counsel and defense counsel can agree on the terms of a protective order governing the release and use of information produced during discovery.

### Conclusion

Plaintiff's first motion to compel (Docket # 121) is **granted in part and denied in part**. Plaintiff's second motion to compel (Docket # 124) is **denied**. As to any discovery demand not referenced in this Decision and Order, plaintiff's motion to compel is denied.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: March 31, 2010
Rochester, New York