UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

VICTOR SOWELL,

               Plaintiff,

    -vs-

PAUL H. WEED, T. HARRIS, D. FLYNN,
DONALD SELSKY, J. ESCROW, M. SHEAHAN, F.
BIGIT,

              Defendants.

**DECISION AND ORDER**
**No. 07-CV-6355(MAT)**

─────────────────────────────────

## I.   Introduction

Victor Sowell, an inmate in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action <u>pro se</u> pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights in connection with (1) a disciplinary hearing finding him guilty on March 8, 2006, of impersonation, possession and distribution of a departmental document without authorization, and unauthorized correspondence with a parolee; and (2) a use-of-force ("UOF") incident on June 18, 2006, which resulted in Sowell sustaining significant injuries and being found guilty of assaulting several correction officers.

## II.  Background

### A.   The Parties

At all relevant times, Correction Officer Paul H. Weed ("CO Weed"), Timothy Harris ("CO Harris"), and Daniel Flynn ("CO Flynn")

were employed at Southport and were involved in the June 18, 2006 UOF incident. Captain M. Sheahan ("Capt. Sheahan") presided over the disciplinary hearing dealing with the assault charges filed against Sowell after the UOF incident.

Civilian Hearing Officer James Esgrow ("CHO Esgrow") was assigned to Southport to conduct the disciplinary hearing involving the fraud charges. Senior Investigator Frank Bigit ("Inv. Bigit") of DOCCS' Office of the Inspector General conducted the investigation into the fraud charges.

Donald Selsky, DOCCS' Director of Inmate Discipline and Special Housing Units ("Director Selsky") reviewed both disciplinary hearings.

### B.  Factual Summary

The following facts—viewed in the light most favorable to Plaintiff—are gleaned from the pleadings and from the parties' submissions in conjunction with Defendants' summary judgment motion. See, e.g., Lipton v. Nature Co., 71 F.3d 464, 471 (2d Cir. 1995) ("For the purposes of a summary judgment motion, courts are required to view the facts in the light most favorable to the parties opposing the motion and to suspend judgments on credibility.").

### 1.   The 2006 Disciplinary Hearing on Charges of Fraud[1]

On March 24, 2003, the Inspector General's Office ("IGO") received a complaint stating that a correction officer employed at Great Meadow Correctional Facility had found an unexplained charge on one of his credit accounts. Other correction officers also began having difficulties in refinancing mortgages and obtaining loans.

Inv. Bigit was assigned to the matter on May 1, 2003, and over the course of two years, he conducted an investigation which revealed that Sowell had obtained a mistakenly unredacted UOF report through a March 2000 Freedom of Information Law request. The report pertained to a UOF incident on May 15, 1999, which Sowell was challenging, and report contained the Social Security numbers of the correction officers who had been involved. With the assistance of a confidential informant, Inv. Bigit determined that Sowell had sent this information to a parolee, Shammell Ayatollah ("Ayatollah"),[2] with instructions on how to obtain fraudulent credit cards in the names of the officers whose personal

---

[1]
The Court has taken judicial notice of the appellate brief filed by the State in connection with Plaintiff's administrative proceeding challenging the outcome of the fraud disciplinary hearing. See, e.g., Ford v. Krusen, No. 9:06-CV-0890 (GTS/DEP), 2009 WL 959534, at *3 n.2. (N.D.N.Y. Apr. 6, 2009) (citing Waldman v. Village of Kiryas Joel, 39 F.Supp.2d 370, 372–73 (S.D.N.Y. 1999), aff'd, 207 F .3d 105 (2d Cir. 2000)).

[2]
Apparently, Shammell Ayatollah died in 2001, prior to the commencement of Inv. Bigit's investigation.

information was contained in the report. Once Inv. Bigit completed his investigation, he filed a misbehavior report on October 7, 2005, charging Sowell with violations of Rule 111.10 (Impersonation), Rule 113.26 (Possession of Employee Personal Information); Rule 116.12 (Distribution of a Facility Document); and Rule 180.11 (Corresponding with a Parolee).

A disciplinary hearing was held which resulted in a finding of guilty on all charges. However, this hearing was reversed by CHO Esgrow because CO Hibbard, the employee legal assistant assigned to Sowell, failed to provide adequate assistance. CHO Esgrow assigned Sergeant McKehan ("Sgt. McKehan"), from whom Sowell refused assistance. Nevertheless, Sgt. McKehan provided Sowell with the non-confidential information he had requested from his first legal assistant but not received. Throughout the hearing there were multiple adjournments to allow for Sowell to receive additional legal assistance.

In a disposition dated March 8, 2006, CHO Esgrow found Sowell guilty of all the charges set forth in the misbehavior report and imposed a penalty of 18 months in SHU. The violation of Rule 113.26 did not result in any additional SHU time or loss of privileges. On administrative appeal, Director Selsky modified the disposition by dismissing the conviction for Rule 113.26, because Sowell had not had adequate notice of it. The SHU sentence was undisturbed.

Sowell filed a petition pursuant to Article 78 of New York's Civil Practice Law and Rules, which was denied on the merits by the Appellate Division, Third Department, of New York State Supreme Court. Matter of Sowell v. Selsky, 43 A.D.3d 1226, 1226, 2007 N.Y. Slip. Op. 06606 (3d Dep't 2007) (citations omitted).

## 2.    The June 18, 2006 Use-Of-Force Incident

On the morning of Sunday, June 18, 2006, Sowell headed out of his cell to go to recreation. As per the usual procedure, his hands were cuffed in the front of his body. When he stopped for a security wanding and pat-frisk, Sowell placed his hands on the wall to be frisked. CO Weed conducted the pat-frisk and, according to Sowell, "ran his hand over [Sowell's] private part and he squeezed[.]" See VS1.38:9-14; 40:1-8.[3] Although he knew he was not supposed to turn away from the wall or take his hands off the wall during the wanding or pat-frisk, Sowell turned to right, bringing his head and shoulder away from the wall. Sowell said, "[W]hat are you doing, man, what are you doing[?]" Id.

CO Weed "jumped back" and Sowell tried to put his hands back on the wall. However, CO Weed "rushed [him] and grabbed [him] around the waist[.]" Sowell stated that he "didn't resist at all"

---

[3]

Numbers preceded by "VS1." refer to pages from the first transcript of Sowell's deposition (Defendants' Exhibit ("Defs' Ex.") A, attached to the Declaration of Gary Levine Esq. ("Levine Decl."), Dkt #173). Numbers preceded by "VS2." refer to pages from the second transcript of Sowell's deposition (Defs' Ex. B).

and "fell to the ground." Sowell related that one of the officers activated an alarm, bringing numerous other officers to the scene. Sowell testified that they were "was allover [him]" while he was face-down on the floor handcuffed. The officers "smashed [his] face to the ground" and were "doing all kinds of stuff to [him]." Sowell testified that CO Weed was "sitting on his butt" with "his legs out" and he "had [Sowell's] hand. VS1.40:16-25; 41:1-5. Sowell was "able to see [Weed] sitting there holding [his] hands," and "breaking [his] fingers, dislocating [his] fingers[.]" CO Weed tried to stop Sowell from yelling by "smash[ing] [his] face to the ground," almost "choking [him][.]" VS1.42:21-25; 43:1-3. Sowell explained that CO Weed was "[s]napping [his finger] one by one, pulling them, trying to close [his] hand, pulling it back and snapping." Specifically, CO Weed was "[p]ulling them backwards, almost like in an upwards and backwards direction[.]". CO Weed started with Sowell's pointer (index) finger. Throughout the whole incident, Sowell was screaming, "He is breaking my fingers." VS1.58:11-23.

Sowell stated that "[s]omebody had their knee on [his] face or elbow or arm on [his] face[.]" With regard to CO Harris, Sowell testified, "Harris hit me in the back of the head, because I seen him behind me, right, and I see he was like punching me, like this, like trying to hide himself from punching me in my face." VS1.51:4-9; 55:1-8 (testifying that CO Harris hit him in the back of the

head with a baton); VS1.53:24-25; 54:1-4 ("I was hit in the back of my head. Hit in the side of my face, my ear, everywhere, kicked in the back, everywhere, ribs."). To keep Sowell from yelling and screaming, the officers "smashed [his] face down and he continued doing it while they had [his] face smashed down."

Two of Sowell's fellow inmates on the gallery, Michael Ramirez ("Ramirez") and Alexander Screahben ("Screahben"), were in cells near the location of the incident. Because he was a porter, Ramirez had a mirror, which he stuck outside his cell once he heard Sowell screaming. Ramirez testified that he only saw "glimpses of [Sowell's] body parts, because there was so many C.O.s on him." MR.32.[4] Ramirez testified that he saw the correction officer searching Sowell in the genital area and he said, "[H]ey, what are you doing?" MR.13. At that point, "the other officers just brang [sic] him down." MR.14. Ramirez could see "Sowell on the floor, and he was screaming . . . that his fingers was broke." MR.18. According to Ramirez, Sowell said this "quite a few times". Sowell was "[v]ery loud" and "[e]verybody heard him." MR.18, 23-24. Upon hearing Sowell crying out that his fingers were being broken, all the other inmates started screaming, "[L]eave him alone[!]" MR.19. Ramirez estimated that the incident lasted about five minutes.

---

[4] Numbers preceded by "MR." refer to pages from the deposition transcript of Michael Ramirez, a/k/a Michael Delgado. Numbers preceded by "AS." refer to pages from the deposition transcript of Alexander Screahben.

Screahben did not see the incident, but was able to hear it. AS.11. He heard someone say, "'What are you doing?'" This was followed by "a lot rumbling" and the person started "screaming[,]" "'Yo, you breaking my finger.'" AS.11, 13-15. Screahben said that the person was "real loud, especially because he was crying[,]. . . . saying, 'They broke my fingers. They broke my fingers.' And he was bawling." AS.14-15, 22, 23. Screahben estimated that the incident lasted about four minutes. AS.18.

After the incident, the correction officers hauled Sowell into the shower area. CO Weed issued misbehavior report with regard to the events from the pat-frisk to placing Sowell in the shower, charging him with 106.10 (refusing a direct order); 115.10 (refusing frisk or search procedures); 102.10 (threats); 107.10 (interference with employee); 104.13 (conduct which disturbs order of facility); and 100.11 (assault on staff).

Sowell stated that when he "got in the shower, all of my fingers were pointed back this way and pointing to the side[,]" VS1.56:14-25, so he started trying to pop them back into place. CO Robinson, who was watching Sowell, observed him doing this and gave him a direct order to stop, which Sowell ignored. Sgt. McKeon then came and talked to Sowell for a few minutes. Then, according to CO Robinson's misbehavior report, threw himself to the floor, hitting the back of his head and rolling around "violently rolling back and forth banging his hands, head and feet on and against the shower

floor and shower ledge." Both CO Robinson and Sgt. McKean ordered him to stop, and after about 30 seconds, Sowell complied. CO Robinson wrote up a misbehavior report charging Sowell with violating Rule 106.10 (Refusing a Direct Order) and 123.10 (An Inmate Shall Not Inflict or Attempt to Inflict Bodily Harm Upon Himself).

Facility nurse Karen Weaver ("Nurse Weaver") examined Sowell in the shower and saw that his second through fifth fingers (index through pinkie) were "grossly deformed" and he had a quarter-sized hematoma (black and blue mark) on the back of his head, which grew to three and one-half inches in size. KW.23-24. His left pupil was sluggish, and the right pupil was within normal limits. KW.25.

Plaintiff was transported to the Arnot-Ogden Medical Center ("AOMC") where he was treated by orthopedic surgeon, Mark Gibson, M.D. ("Dr. Gibson"). Sowell had "pretty significant swelling" around the fingers of his left hand, consistent with dislocations of those digits. X-rays confirmed that he had a small avulsion fracture on his fourth (ring) finger along with a dislocation of that finger. The main injury appeared to have been sustained by the third and fourth digits. Because of the difficult nature of the reduction, Dr. Gibson injected an anesthetic before moving the joint back into place. Following the reduction, Dr. Gibson "buddy-taped" the third and fourth fingers together and instructed Plaintiff on the importance of beginning a passive and active range

-9-

of motion program so that he would not lose motion at the proximal interphalangeal joints of the affected fingers. Plaintiff was discharged from AOMC and was seen in follow-up by Dr. Gibson on several occasions.[5]

Captain Michael Sheahan ("Capt. Sheahan") presided over a Tier III hearing on July 4-5, 2006, based on CO Weed's misbehavior report. Sowell was found guilty of all charges, although on the disposition sheet, Capt. Sheahan indicated that he found Sowell guilty of violating Rule 104.11 (Violent Conduct) instead of Rule 104.13, which had been charged in the misbehavior report. Sowell was sentenced to 12 months (6 months suspended and 6 months deferred) in the Special Housing Unit, to begin on April 27, 2007.

On August 25, 2006, Director Selsky modified the hearing disposition to the extent that the conviction of Rule 104.11 was dismissed because that charge had not been listed on the misbehavior report. There was no change in penalties. See Defs' Ex. W.

A Tier II hearing was held on July 17, 2006, based upon CO Robinson's misbehavior report charging Sowell with refusing a direct order while he was waiting in the shower area after the UOF

---

[5]

Photographs submitted by Sowell show that his fingers remain permanently bent. He asserts that he has what is known as a "Boutonnière Deformity," where an injury to the tendons in the fingers prevents the fingers from fully straightening. He asserts that he now suffers from stiffness and a severe case of arthritis in the fingers that were dislocated.

incident, and with inflicting bodily harm upon himself. Lieutenant Donahue, the hearing officer, found Sowell guilty of refusing a direct order and not guilty of self-inflicted bodily harm, and sentenced him to 25 days of keeplock. On administrative appeal, Captain Sullivan reversed the decision in a memorandum dated July 20, 2006. This disciplinary hearing is not at issue in the present lawsuit.

Sowell commenced an Article 78 proceeding in New York Supreme Court, Albany County on October 3, 2006, challenging both hearings stemming from the UOF incident. In a Decision and Order dated April 21, 2008, Associate Justice Judith A. Hard denied Sowell's petition on the merits.

This timely § 1983 action followed. Pro bono counsel was appointed to assist Sowell, and extensive discovery was conducted. Presently before the Court is a Motion for Summary Judgment (Dkt #169) pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 56(c) by defendants Timothy Harris, Daniel Flynn, James Esgrow, Donald Selsky, Michael Sheahan, and Frank Bigit seeking to dismiss a number of claims in Plaintiff's Second Amended Complaint (Dkt #167). Defendant Paul Weed has not joined in the Motion for Summary Judgment. Plaintiff's pro bono counsel has opposed the motion (Dkt #192).

## III. General Legal Principles

### A.   Section 1983

Section 1983 authorizes an individual who has been deprived of a federal right under the color of state law to seek relief through "an action at law, suit in equity, or other proper proceeding for redress." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). Two essential elements comprise a Section 1983 claim: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) (citation omitted).

To bring a § 1983 claim against a prison official, a plaintiff must allege that individual's personal involvement; it is not enough to simply assert that the defendant is a "link in the prison chain of command." McKenna v. Wright, 386 F.3d 432, 437 (2d Cir. 2004) (quotation omitted). "[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (citation omitted); accord Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).

### B.   Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Initially, the moving party must show that there is "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has carried its burden, the opposing party must set forth "specific facts showing that there is a genuine issue for trial[,]" FED. R. CIV. P. 56(e), and must introduce evidence beyond the mere pleadings to show that there is an issue of material fact concerning "an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The reviewing court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (citation omitted). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.) (citing Anderson, 477 U.S. at 250-51), cert. denied, 502 U.S. 849 (1991). If, "as to the issue on which summary judgment is sought, there is any evidence in the

record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." <u>Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.</u>, 391 F.3d 77, 83 (2d Cir. 2004) (quotation omitted).

## IV.  Discussion

### A.    Official Capacity Claims

Defendants argue that to the extent that Sowell seeks monetary damages against them in their official capacities, such claims are barred by the Eleventh Amendment. <u>See</u> <u>Farid v. Smith</u>, 850 F.2d 917, 921 (2d Cir. 1988). Sowell agrees that money damages are not recoverable against Defendants in their official capacities. He maintains, however, that he also seeks prospective injunctive or equitable relief, and that such claims are not barred by the Eleventh Amendment.

In Paragraph 4 of the Second Amended Complaint, Plaintiff seeks "[a]n order expunging Department of Corrections findings of guilt in regard to the Misbehavior Reports." Second Amend. Compl., at 34, ¶ 4 (Dkt #167). Plaintiff is correct that the relief sought in this paragraph is not barred by the Eleventh Amendment. <u>See</u> <u>Nevarez v. Hunt</u>, 770 F. Supp.2d 565, 568 (W.D.N.Y. 2011) (holding that official-capacity claim for equitable relief in form of expungement of various disciplinary is not barred by Eleventh Amendment) (citation omitted). However, as discussed further below, the Court is dismissing the claims stemming from the two

-14-

disciplinary hearings, and thus Sowell's requests for equitable relief in the form of expungement are denied.

In Paragraph 5 of the Second Amended Complaint, Sowell requests "[a] declaratory judgment or injunction preventing any retaliation for prosecuting this action[.]" Second Amend. Compl., at 34, ¶ 5 (Dkt #167). Injunctive relief is an equitable remedy, appropriate in cases where the plaintiff can show he will suffer a "likelihood of substantial and immediate irreparable injury" if an injunction is not granted. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (quotation omitted). Sowell's request for prospective injunctive relief thus is not barred, per se, by the Eleventh Amendment. At this juncture, the Court will not dismiss Sowell's claim against Defendants in their official capacities for prospective injunctive relief. However, Sowell is advised that under the Prison Litigation Reform Act, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a).

B. **Excessive Force Claims Arising from the June 18, 2006 Incident**

1. **Overview**

In his first cause of action, Sowell asserts that CO Weed utilized excessive force during the June 18, 2006 incident, in violation of the Eighth Amendment, and that CO Harris and CO Flynn

failed to intervene in the assault or otherwise prevent CO Weed from harming him. Defendants CO Harris and CO Flynn move for summary judgment dismissing this cause of action, arguing that Sowell has not raised a triable issue of fact as to their personal involvement in the allegedly excessive use of force. Notably, CO Weed has not moved to dismiss the excessive force claim. Defendants CO Harris and CO Flynn urge that their actions in restraining Plaintiff after he came off the wall "were a rational and calculated response to a perceived threat of inmate resistance." Defendants' Memorandum of Law ("Defs' Mem.") at 13 (citation omitted)).

### 2.   The Law on Excessive Force

The Supreme Court has held that "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Hudson v. McMillian, 503 U.S. 1, 4 (1992); accord Wilkins v. Gaddy, 130 S. Ct. 1175, 1177, 1178 (2010) (per curiam) ("In requiring what amounts to a showing of significant injury in order to state an excessive force claim, the Fourth Circuit has strayed from the clear holding of this Court in Hudson."). The "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins, 130 S. Ct. at (quoting Hudson, 503 U.S. at

-16-

7; citing <u>Whitley v. Albers</u>, 475 U.S. 312, 319-21 (1986)). Thus, while relevant to the question of maliciousness, the absence of serious injury does not end the inquiry. <u>Hudson</u>, 503 U.S. at 7. In addition to the extent of injury suffered by an inmate, other proper factors for consideration are the need for the use of force, the relationship between that need and the amount of force used, the threat "reasonably perceived" by the officers, and any efforts the officers made to moderate the severity of the force used. <u>Id.</u> (citing <u>Whitley</u>, 475 U.S. at 321).

### 3. Failure to Intercede to Prevent an Eighth Amendment Violation

When a correction officer observes another officer using excessive force, or has reason to know that excessive force will be or is being used, he can be liable under the Eighth Amendment if he fails to intercede. <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 72 (2d Cir. 2001) (citing <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") (collecting cases)). For liability to attach, the correction officer must have had a "realistic opportunity" to prevent the harm from occurring. <u>O'Neill v. Krzeminski</u>, 839 F.2d 9, 11 (2d Cir. 1988); <u>see also Curley</u>, 268 F.3d at 72. In general, the question of whether  a correction officer had adequate time to intervene or was capable of preventing

the assault is an issue of fact for the jury "unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." O'Neill, 839 F.2d at 12; accord Anderson, 17 F.3d at 557.

With this legal backdrop, the Court turns to the question of whether CO Harris and CO Flynn may be liable for failing to intercede to prevent CO Weed from harming Plaintiff. As noted above, CO Weed has not moved for summary judgment on the Eighth Amendment claim against him, tacitly conceding that there are genuine issues of material fact as to whether he used excessive force against Sowell. Indeed, the Court has no difficulty concluding that Plaintiff has raised a genuine issue of material fact as to whether CO Weed applied force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline in light of (1) Plaintiff's testimony that CO Weed broke his second through fifth fingers, one by one; (2) Dr. Gibson's assessment of the severity of Plaintiff's injuries; (3) the relatively lengthy duration (approximately six minutes)[6] of the incident; and (4) the fact that Plaintiff was handcuffed in the front of his body and was lying face down on the

---

[6]

The transcript of the disciplinary hearing indicates that the videotape recorded by the surveillance system monitor of the incident covers the time-period from 9:47 a.m. to 9:53 a.m. on June 18, 2006. See Defs' Ex. CCC (Dkt #173-3).

floor restrained by several other officers while CO Weed was breaking his fingers. See VS1.38, 40-42, 46, 49, 51, 59, 60-64.

With the excessive force element of a failure-to-intercede claim adequately established for purposes of defeating summary judgment, the Court must examine whether there are genuine issues of material fact regarding whether CO Harris and CO Flynn had a "realistic opportunity" to prevent the harm from occurring. Sowell testified that during the incident, which lasted about six minutes, he was screaming that his fingers were being broken. VS1.42, 58. Both of the inmates who gave depositions in this matter confirmed that Sowell was crying out and loudly yelling, "They are breaking my fingers!" E.g., MR.18, AS.14-15. These inmates also testified they heard Sowell say repeatedly, "I'm not resisting!" Given the duration of the incident, and the testimony from non-party witnesses Ramirez and Screahben, the Court find that Sowell has raised a genuine issue of material fact as to whether CO Harris and CO Flynn could be liable for failing to intercede. Viewing the evidence in the light most favorable to Sowell, two individuals who were not directly involved in the incident testified they heard Sowell screaming that his fingers were being broken and that he was not resisting. This, coupled with the duration of the incident (six minutes), the fact that Sowell was on his stomach and handcuffed, and the number of other officers who participated in the incident, raises an issue of fact as to whether CO Harris and CO Flynn, who

were actually involved, had reason to know excessive force was being used by CO Weed and had a realistic opportunity to intervene to prevent its use. Cf. O'Neill, 839 F.2d at 11-12 ("Even when the evidence is viewed in the light most favorable to the plaintiff, there is insufficient evidence to permit a jury reasonably to conclude that [the officers'] failure to intercede was a proximate cause of the beating. The three blows were struck in such rapid succession that [the officer] had no realistic opportunity to attempt to prevent them. This was not an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator.").

### 4. CO Harris' Direct Liability Under the Eighth Amendment

Sowell argues that CO Harris should be held liable as a principal under the Eighth Amendment because CO Harris allegedly struck him in the back of the head while Sowell was being restrained. See VS1.54-55. Sowell's medical records indicate that he sustained a round hematoma approximately 3½ inches in diameter on the back of his skull. See Defs' Ex. S. Defendants argue that this assertion is not supported by the videotape evidence, and therefore the Court should deem it incredible as a matter of law.

At his deposition, Sowell testified as follows:

> Harris hit me in the back of the head, because I seen him behind me, right, and I see he was like punching me, like this, like trying to hide himself from punching me in my face.

VS1.51. Later in his deposition, however, Sowell testified that CO Harris hit him with a baton. CO Harris has denied striking Sowell with a baton or with his fists. TS.66.[7]

Inmate Ramirez testified that he did not observe any person hitting another person during this incident because "[t]he only thing [he] could observe" was "a whole bunch of [officers] on top of him. . . ." MR.21. Later in his deposition, Ramirez clarified that he could observe Plaintiff from the knee up to his head, and although he could not see him completely, he "could make out [Plaintiff's] body[.]" MR.23. When asked if Plaintiff was being struck in any way, Ramirez replied, "No, not that I seen." MR.23.

Defendants also note that although the videotape is not perfectly clear, it is clear enough to determine that there was not a baton being used at any time. Defs' Mem. at 13. Defendants also argue that it is implausible for Plaintiff to simultaneously claim that he was struck with a baton on the back of his head and that he was turned so that he could see who was hitting him. See Defs' Mem. at 13.

Plaintiff did not address Defendants' arguments in his memorandum of law and indeed, does not mention the Eighth Amendment claim against CO Harris as a principal beyond stating that he "punched Sowell in the back of the head. . . ."  Pl's Mem. at 2.

---

[7]

Numbers preceded by "TS." refer to pages from the deposition transcript of Timothy Harris.

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994) (citation omitted). The Court finds that Defendants have adequately demonstrated, by reference to pertinent portions of the record, that no genuine issue of material fact exists with regard to this claim. Summary judgment therefore is granted in favor of CO Harris with regard to the claim that he personally used excessive force in violation of the Eighth Amendment against Plaintiff.

### C.   The Due Process Claims Related to the Disciplinary Hearings

Sowell raises a number of claims concerning alleged violations of his procedural due process rights in connection with the fraud disciplinary hearing and the assault disciplinary hearing. Defendants have asserted that some of these claims are barred by collateral estoppel (issue preclusion) and the Rooker-Feldman doctrine[8] because Plaintiff raised them in the Article 78 petitions in state court challenging each disciplinary hearing. Based upon its review of the record and relevant caselaw, the Court agrees that Defendants' argument is persuasive. However, Plaintiff has

---

[8]

The Rooker-Feldman doctrine is named for Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

asserted that Director Selsky should be held liable for failing to correct the constitutional errors at the disciplinary hearings, which requires the Court to consider the merits of those same claims that are barred by collateral estoppel and/or <u>Rooker-Feldman</u>. Accordingly, in the interest of judicial economy, the Court will consider the substance of Plaintiff's underlying due process claims, which are easily resolved on the merits.

To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, the reviewing court must find that, as the result of conduct performed under color of state law, the inmate was deprived of life, liberty, or property without due process of law. <u>Bedoya v. Coughlin</u>, 91 F.3d 349, 351 (2d Cir. 1996). It is undisputed that CHO Esgrow and Capt. Sheahan acted under color of state law. The remaining inquiry comprises two prongs: (1) whether Sowell had a protected liberty interest in not being confined pursuant to the respective SHU sentences he served; and, if so, (2) whether the deprivations of those liberty interests occurred without due process of law. <u>Id.</u> at 351-52 (citing <u>Kentucky Dep't of Corr. v. Thompson</u>, 490 U.S. 454, 460-61 (1989)). Defendant has assumed <u>arguendo</u> that Plaintiff had protectible liberty interests in being free from the SHU sentences he served as a result of the disciplinary hearings. The Court has done the same. The alleged due process violations are addressed in turn below.

### 1.   The Disciplinary Hearing on Fraud Charges

#### a.   Delay in Filing the Misbehavior Report

Plaintiff asserts that the time that elapsed between the conduct underlying the disciplinary charges and the filing of the misbehavior report violated the DOCCS' regulation requiring that all misbehavior reports must be "reported in writing as soon as practicable." N.Y. COMP. CODE R. & REGS. tit. 7, § 253-3.1(a). "State procedural requirements do not establish federal constitutional rights." Bolden v. Alston, 810 F.2d 353, 358 (2d Cir.), cert. denied, 108 S. Ct. 229 (1987). It is unnecessary for the Court to determine if CHO Esgrow violated any applicable state law because such a violation is not cognizable under § 1983. Pollnow v. Glennon, 757 F.2d 496, 501 (2d Cir. 1985). See, e.g., Davidson v. Capuano, No. 78 CIV. 5724 (RLC), 1988 WL 68189, at *18  n.5 (S.D.N.Y. June 16, 1988) (dismissing as not cognizable plaintiff's claim that defendants violated specific state regulations governing prison disciplinary proceedings) (citations omitted).

#### b.   Denial of Access to Evidence

Sowell contends that CHO Esgrow violated his right to due process by denying his requests to view certain documentary evidence and to submit witnesses to cross-examination.  As a matter of federal constitutional law, an inmate does not have a right to cross-examine adverse witnesses at a disciplinary hearing, and the hearing officer may rely upon evidence not presented at the

hearing. E.g., Bolden, 810 F.2d at 358 (citing Baxter v. Palmigiano, 425 U.S. 308, 322-23 & n. 5 (1976)). Consistent with this underlying principle, courts have held that confidential information may be considered even through the inmate has not been permitted access to it. Matter of Abdur-Raheem v. Mann, 85 N.Y.2d 113, 119 (N.Y. 1995) (citation omitted). Such decisions are reviewable only for abuse of discretion. See Wolff, 418 U.S. at 566-67 (prison officials, having "responsibility for the safety of inmates and staff . . . must have the necessary discretion without being subject to unduly crippling constitutional impediments").

On the present record, the Court finds as a matter of law that CHO Esgrow did not abuse his discretion in finding that release of the evidence and testimony requested by Sowell would divulge identifying information that, given the nature of the charges involved, could jeopardize individuals' privacy rights and security. The disclosure, especially of the confidential informant's testimony, also could adversely affect institutional safety and security. See Matter of Abdur-Raheem, 85 N.Y.2d at 123 (rejecting contention that hearing officer erred in denying inmate's request for redacted copy of confidential material on which determination was based because source's identity was evident from substance of information conveyed and meaningful redaction was not possible) (citation omitted). The Court discerns no due process violation in this regard.

          **c.**     **Failure to Meet the "Some Evidence" Standard,**
                    **Failure to Assess the Informant's Reliability,**
                    **and Lack of Corroborating Evidence**

Sowell argues that CHO Esgrow was not able to properly ascertain the confidential informant's reliability and, relatedly, that the confidential evidence was not sufficiently corroborated. Sowell also contends that there was insufficient evidence to support CHO Esgrow's finding of guilty.

Where a prisoner claims he was denied due process in a prison disciplinary hearing because he was found guilty based on insufficient evidence, the claim must be rejected if there was "some evidence" to support the decision. <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985). The Supreme Court in <u>Hill</u> stated that

> [a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any evidence in the record that could support the conclusion reached by the disciplinary board.*

<u>Id.</u> at 455-56 (emphasis supplied). Where the disciplinary finding is based in part on evidence from confidential informants, the Second Circuit has held that the hearing officer must independently assess the credibility of the informants, considering the totality of the circumstances. <u>Sira v. Morton</u>, 380 F.3d 57, 78 (2d Cir. 2004); <u>see</u> <u>also</u> <u>Luna v. Pico</u>, 356 F.3d 481, 488 (2d Cir. 2004). Even if the sole evidence was supplied by a confidential informant,

the "some evidence" standard may be satisfied, "as long as there has been some examination of indicia relevant to [the confidential informant's] credibility." <u>Giakoumelos v. Coughlin</u>, 88 F.3d 56, 61 (2d Cir. 1996) (internal quotation marks omitted).

An independent assessment of the informant's credibility "would not entail more than *some examination* of indicia relevant to credibility . . . ." <u>Russell v. Scully</u>, 15 F.3d 219, 223 (2d Cir. 1993) (emphasis supplied). Plaintiff asserts that CHO Esgrow "offered no indication on the record that he ascertained where or how the confidential witness obtained the information, and the evidence was not independently assessed for reliability." Pl's Mem. at 20. Contrary to Plaintiff's contention, at the disciplinary hearing, CHO Esgrow did make state on the record that he received "[c]ertain confidential document and confidential testimony" into evidence and that he had "made an independent assessment" of the confidential evidence, finding that it "provide[d] details and specifics and d[id] not appear to be motivated by a desire to harm [Sowell]." Defs' Ex. I. This satisfies the not-very-demanding standard of <u>Russell</u> that the hearing officer provide "some examination" of indicia relevant to the informant's credibility. Plaintiff has provided no authority for the proposition that the hearing officer was required to explicitly state that he "ascertained where or how the confidential witness obtained the information[,]" Pl's Mem. at 20.

It bears emphasizing that as a matter of Federal law and New York State law, the hearing officer is *not* required to personally interview or question the confidential informant, and may rely solely on the informants' hearsay statements. See Abdur-Raheem, 85 N.Y.2d at 117 ("[A] personal meeting between the Hearing Officer and the confidential informants is not required and that the informants' hearsay statements can constitute 'substantial evidence' as long as there are objective circumstances demonstrating the informants' reliability and, based on those circumstances, the Hearing Officer makes an independent finding that the informants' evidence is, in fact, reliable."); Russell v. Scully, 15 F.3d 219, 223 (2d Cir. 1993) (as modified on reh'g) ("Neither due process nor applicable precedent compels that a hearing officer . . . conduct personal interviews of confidential informants."). Here, however, CHO Esgrow took testimony from the confidential informant and was able to observe that individual's demeanor first-hand. CHO Esgrow thus exceeded the applicable due process requirements. Cf. Campo v. Keane, 913 F. Supp. 814, 825 (S.D.N.Y. 1996) ("[B]y questioning both Lt. Finn and Sgt. Leghorn about the reliability of the informants, defendant [hearing officer] Pico satisfied the Russell requirement that he in some manner assess the credibility of the confidential informants.").

Plaintiff also argues that the Court should reject CHO Esgrow's Declaration, submitted in support of Defendants' summary

judgment motion, as an impermissible post hoc justification of his decision to credit the confidential informant's testimony. In his Declaration, CHO Esgrow elaborated on his statement at the hearing that the confidential informant's information provided sufficient details and specifics to establish its reliability. For instance, two investigators were present when the informant provided the statements, and each investigator testified in detail, consistently with each other, about what the informant had stated. The informant underwent two interviews and provided the same story on both occasions. In addition, the informant made two written statements after being provided with Miranda warnings, and the statements were sworn to under the penalty of perjury. After hearing the informant's testimony, CHO Esgrow determined that the informant was not motivated by an intent to harm Sowell.

Again, Plaintiff has cited no legal authority for his proposition that CHO Esgrow's Declaration is improper or may not be considered. The Supreme Court has held that a hearing officer need not explain his decision to refuse to call at witness at the hearing, but may do so any time, including in defense of a lawsuit. Ponte v. Real, 471 U.S. 491, 497-98 (1985). This Court sees no reason why Ponte would not apply to a hearing officer's explanation with regard to his credibility assessment of a confidential informant.

Finally, with regard to the quantum of evidence presented, the Court notes that the Appellate Division determined that the disciplinary finding was supported by "substantial evidence" and thus met the New York State standard for evidentiary sufficiency at a disciplinary hearing. See Foster v. Coughlin, 76 N.Y.2d 964, 565 N.E.2d 477, 478 (1990) (New York State law requires prison disciplinary rulings to be supported by "sufficiently relevant and probative" information "to constitute substantial evidence"). This standard is considerably stricter than the Federal "some evidence" standard. See Friedl v. City of N.Y., 210 F.3d 79, 85 (2d Cir. 2000). As the Appellate Division noted, CHO Esgrow had before him Inv. Bigit's detailed misbehavior report, along with the testimony of Inv. Bigit, Inv. Mercada, and Deputy Superintendent of Security Chappius, all of which corroborated the misbehavior report. In addition, CHO Esgrow relied on confidential documents and the confidential informant's testimony explaining how Sowell communicated Social Security numbers to his now-deceased accomplice with instructions on how to use the victims' personal information to fraudulently obtain credit cards. The Assistant Attorney General who inadvertently provided the unredacted UOF report to Sowell testified confidentially, as did the correction officers who were victimized by the fraudulent scheme. The evidence submitted at the disciplinary hearing certainly was sufficient to meet Hill's undemanding "some evidence" standard.

### d. Inadequate Legal Assistance

New York's regulations entitle a prisoner to an employee assistant to help him prepare for a disciplinary hearing. See N.Y. COMP. CODES R. & REGS. tit. 7, §§ 251-4.1, 251-4.2. The United States Supreme Court has held that institutional concerns implicated in prison administration would not be furthered by entitling inmates to legal counsel in the form of a retained or assigned attorney, and therefore a prisoner's right to assistance as a matter of federal constitutional law is more limited. Wolff, 418 U.S. at 570.

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Sowell's claim founders on this basis because he has failed to sue either of his legal assistants, CO Hibbard and Sgt. McKehan. To the extent that he claims that CHO Esgrow failed to ensure that he received adequate legal assistance, this claim is belied by the record. CHO Esgrow exhaustively reviewed all the requests Plaintiff made of his previous legal assistant, and overturned the first hearing because CO Hibbard had failed to provide adequate assistance. After assigning Sgt. McKehan, CHO Esgrow and remained involved in the process so as to facilitate Plaintiff obtaining all of the materials to which he was entitled. Plaintiff clearly received all of the legal assistance to which he constitutionally entitled.

### e.    Partiality of the Hearing Officer

Sowell asserts in a conclusory fashion that CHO Esgrow was not impartial. It is "improper for prison officials to decide the disposition of a case before it [i]s heard," although given the "special characteristics of the prison environment, it is permissible for the impartiality of such officials to be encumbered by various conflicts of interest that, in other contexts, would be adjudged of sufficient magnitude to violate due process." <u>Francis v. Coughlin</u>, 891 F.2d 43, 47 (2d Cir. 1989) (citation omitted). The Court has reviewed the transcripts of the hearing, which reveal that CHO Esgrow presided over the hearing in a fair manner, demonstrated commendable patience, and afforded Plaintiff ample opportunity to be heard. There is no indication that CHO Esgrow was anything but an neutral and impartial arbiter, even measured against the heightened standard applicable to judges generally.

### f.    Erroneous Conviction of Rule 113.26

Sowell asserts that he was wrongfully convicted of violating a rule that was not in effect at the time he was charged, namely, Rule 113.26. Sowell is correct that he cannot be disciplined for violating an unpublished rule that was never served upon him. However, Sowell suffered no prejudice as a result because he ultimately served no SHU time on the Rule 113.26 conviction, which was dismissed on administrative appeal by Director Selsky. <u>See</u> <u>Ayers v. Selsky</u>, No. 07-CV-466, 2010 WL 408442, at *7 (N.D.N.Y.

Jan. 27, 2010) ("Any alleged constitutional violation as to that charge was vitiated by the dismissal. Moreover, as the appeal did not affect the sentence of 140 days in SHU, Ayers suffered no cognizable deprivation with regard to the first charge.").

### g.   Retaliation by Inv. Bigit

Plaintiff asserts that Inv. Bigit filed the misbehavior report charging him with fraud solely in retaliation for declining to become an informant and assist him in his investigation. Inv. Bigit is entitled to qualified immunity with regard to this claim, which is, in any event, purely speculative.

In general, public officials are shielded from suit by the doctrine of qualified immunity if their conduct does not violate the plaintiff's clearly established constitutional rights, or it was objectively reasonable for the officials to believe their acts or omissions did not violate those rights. Holcome v. Lykens, 337 F.3d 217, 220 (2d Cir. 2003) (citations omitted). Even assuming that an inmate has a constitutional right not to become an informant, it was not "clearly established" at the time when the challenged conduct occurred in 2003. Allah v. Juchenwioz, 176 F. App'x 187, 189 (2d Cir. 2006) ("Neither the Supreme Court nor this Court has ever held that a prisoner enjoys a constitutional right not to become an informant."). Because Inv. Bigit's conduct did not violate any clearly established constitutional right, he is entitled to qualified immunity. Id.

In any event, Sowell's allegations concerning Inv. Bigit's allegedly retaliatory motive are wholly conclusory and speculative. See Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001). They are plainly insufficient to state a colorable constitutional claim. E.g., Mitchell v. Senkowski, 158 F. App'x 346, 349-50 (2d Cir. 2005) (inmate's conclusory allegations and speculation that various corrections officers and prison officials acted with retaliatory animus in disciplinary proceedings against him were insufficient to defeat summary judgment in favor of officers and officials, in inmate's action alleging violation of his due process rights during disciplinary proceedings).

### h.    Failure to Correct Errors on Appeal

According to Sowell, Director Selsky, in reviewing his appeal, failed to correct the errors CHO Esgrow made at the hearing level. Since, as discussed above, Sowell has failed to show that his rights were violated during the disciplinary proceeding conducted by CHO Esgrow, there is no legal basis for his claim against Director Selsky. Clyde v. Schoellkopf, 714 F. Supp.2d 432, 439 (W.D.N.Y. 2010) (citing, inter alia, Black v. Selsky, 15 F. Supp.2d 311, 318 (W.D.N.Y. 1998)).

Plaintiff also accuses Director Selsky of vacating the first hearing to cover up the fact that the first hearing officer allegedly erased documents from the record. Plaintiff has not alleged that CHO Esgrow committed such misdeeds at the second

hearing. An inmate is not deprived of due process where, as here, an administrative appeal has cured a hearing's procedural defects. Russell v. Scully, 15 F.3d 219, 222 (2d Cir. 1993) (citing Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992) (per curiam)).

**2.   The Due Process Claims Related to the Disciplinary Hearing on the Assault Charges**

**a.   Insufficiency of the Evidence and Falseness of the Allegations**

"Ground I" in the Second Amended Complaint asserts that "[t]he Misbehavior Report (MR) and staff testimony Lacked Substantial or Some Evidence to support the guilty determination" and "[t]he charges of assault were brought . . . to cover up the assault upon [him][.]" Dkt #167. Defendants argue that these claims are unexhausted.

A prisoner seeking relief pursuant to § 1983 must, at a minimum, exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Under New York law, in order to preserve an issue stemming from a disciplinary hearing, the inmate must raise the particular objections regarding the disciplinary hearing either during the hearing itself or on administrative appeal. E.g., Tavarez v. Goord, 237 A.D.2d 837, 838, 655 N.Y.S.2d 189 (3d Dept. 1997) (citation omitted). Here, the claims regarding evidentiary insufficiency of the guilty finding and falsity of the misbehavior report were not raised on Plaintiff's administrative appeal or in his Article 78 proceeding. See Plaintiff's Article 78 Brief dated

10/03/06, ¶ 14 (indicating that the claims set forth in the brief were raised on administrative appeal) (Dkt #173-3). Accordingly, Sowell has not exhausted "such administrative remedies as are available" within the meaning of 42 U.S.C. § 1997e(a). See, e.g., Khalid v. Reda, No. 00 Civ. 7691(LAK)(GWG), 2003 WL 421145, at *5 (S.D.N.Y. Jan. 23, 2003) (finding that prisoner had not fulfilled § 1997e's exhaustion requirement where "administrative appeal did not raise or even allude to his current claim" and he had not brought a collateral proceeding in state court).

The Second Circuit has held that a rule of total exhaustion is not required by the PLRA, and that exhausted claims may be allowed to proceed while unexhausted claims are dismissed. Johnson v. Testman, 380 F.3d 691, 695 n.4 (2d Cir. 2004); Ortiz v. McBride, 380 F.3d 649, 663 (2d Cir. 2004). The Court accordingly dismisses without prejudice Plaintiff's unexhausted claims that his finding of guilt at the disciplinary hearing are unsupported by "some evidence" or "substantial evidence" and that CO Weed's misbehavior report was false.

### b.   Inadequate Misbehavior Report

As Ground II of the Second Amended Complaint, Plaintiff asserts that pursuant to 7 N.Y.C.R.R. § 251-3.1(C)(1), (C)(2), the allegations in the Misbehavior Report "do not match the rule-book violations or provide adequate notice for the alleged violations" of the rules charged. A misbehavior report that includes the date,

-36-

time, and location of his alleged violation; the rule allegedly violated along with a brief description of that rule; and a summary of the incident meets the standards set forth in 7 N.Y.C.R.R. § 251-3.1(c)(1), (2) and provides an inmate with sufficient notice. Omaro v. Goord, No. 06-CV-6141-CJS, 2009 WL 2163102, at *4 (W.D.N.Y. July 17, 2009) (citing Johnson v. Goord, 305 F. App'x 815, 817 (2d Cir. 2009)). CO Weed's misbehavior report included all of these details, and it therefore provided Plaintiff with sufficient notice of the charges.

With regard to whether there was adequate notice of Rule 104.10, it is well settled that under the Due Process Clause an inmate facing disciplinary proceedings must be accorded advance notice of the charges made against him. Wolff, 418 U.S. at 566. Here, CO Weed indicated that he was charging Plaintiff with Rule 104.13. Capt. Sheahan, the hearing officer, found Sowell guilty violating Rule 104.10, and did not consider the violation of Rule 104.13.

On administrative appeal, Director Selsky reversed the finding of guilt under Rule 104.10 because Sowell had not been charged with violation that rule and thus did not have proper notice of it. Director Selsky's reversal thus remedied the due process violation that occurred when Capt. Sheahan found Sowell guilty of a charge of which he did not have advance notice. Ayers v. Selsky, No. 07-CV-466, 2010 WL 408442, at *7 (N.D.N.Y. Jan. 27, 2010)

-37-

("[T]he first charge in the misbehavior report dismissed on administrative appeal by Selsky. Any alleged constitutional violation as to that charge was vitiated by the dismissal. Moreover, as the appeal did not affect the sentence of 140 days in SHU, Ayers suffered no cognizable deprivation with regard to the first charge.").

### c.  Spillover Prejudice

Plaintiff asserts that the inclusion of an uncharged violation, i.e., Rule 104.10, "tainted the entire proceeding". This claim is based on pure speculation and does not merit relief.

### d.  Inadequate Legal Assistance

Plaintiff contends that his assigned employee legal assistant, Sgt. Morse, failed to provide adequate assistance when he failed to interview witnesses as requested pursuant to 7 N.Y.C.R.R. § 251-4.1 and failed to secure relevant documentary evidence pursuant to 7.N.Y.C.R.R. § 254.6(a)(3). The Second Circuit has held that prison authorities have a constitutional obligation to provide "substantive assistance" to an inmate in marshaling evidence and presenting a defense. Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir. 1988). At a minimum, an employee legal assistant "should perform the investigatory tasks which the inmate were he able, could perform for himself." Id. at 897–98.

Contrary to Plaintiff's contentions, Sgt. Morse did contact the requested inmate witnesses, who agreed to testify but declined

to give written or oral statements in advance of the disciplinary hearing. Even if Sgt. Morse failed to obtain certain documentary evidence before the hearing, Plaintiff was afforded the opportunity during the hearing to review the requested logs and redacted reports. In sum, Plaintiff cannot demonstrate that he was prejudiced by Sgt. Morse's alleged shortcomings.

### e.  Untimeliness of the Disciplinary Hearing

Plaintiff alleges that Capt. Sheahan inappropriately re-started the hearing after Plaintiff had already made various objections, the hearing was untimely pursuant to 7 N.Y.C.R.R. § 251-5.1(b), which provides that a disciplinary hearing must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized. This claim raises a question of state procedural law only. As such, it is not cognizable in this § 1983 proceeding. Cusamano v. Sobek, 604 F. Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases). Any claim of undue delay is subject to Federal constitutional standards, which require only that the disciplinary hearing be held within a "reasonable time" and not within any prescribed number of days. Russell v. Coughlin, 910 F.2d at 78 n. 1 ("Federal constitutional standards rather than state law define the requirements of procedural due process."). The "reasonable time" standard clearly was met in Sowell's case.

### f.   Denial of the Right to Call Witnesses

Plaintiff asserts that he was denied his fundamental due process right to call witness because Capt. Sheahan failed to allow the inmate in cell A-10-16 to testify.[9] According to Sowell, the inmate in cell A-10-16 would have testified concerning what he overheard Sowell say after the UOF incident, when he was placed by the officers in the shower. Sowell opined that perhaps the inmate heard things that Sowell himself did not remember saying. Capt. Sheahan denied the request as redundant.

All four of the inmates who appeared testified concerning what they heard during and after the UOF incident, including the time during which Sowell was in the shower area. Thus, Capt. Sheahan did not abuse his discretion in determining that the inmate in A-10-16 would have offered redundant testimony. Furthermore, as Capt. Sheahan observed, the period covered by the disciplinary hearing concerned the time up until Sowell's being placed in the shower. Arguably, then, the uncalled inmate's testimony was not relevant to the hearing.

---

[9] Four inmates appeared and testified at the hearing. Alexander Screahben and Michael Ramirez testified in sum and substance as they did in their deposition testimony, which has been summarized above in this Decision and Order. William Jacobs and Albert Lawson also testified, and their testimony was consistent with that offered by Ramirez and Screahben. See generally Transcript of Disciplinary Hearing, Defs' Ex. CCC (Dkt #173-3).

g.    **Failure to Correct Errors on Appeal**

Sowell has failed to show that his rights were violated during the disciplinary proceeding conducted by Capt. Sheahan. Consequently, his claim against Director Selsky for failing to correct the alleged errors at the disciplinary proceeding lacks a basis in law. Clyde v. Schoellkopf, 714 F. Supp.2d at 439 (citing, inter alia, Black v. Selsky, 15 F. Supp.2d at 318).

**V.   Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment (Dkt #169) is **granted in part** and **denied in part**. All claims against CHO Esgrow, Inv. Bigit, Capt. Sheahan, and Director Selsky are dismissed with prejudice. The Eighth Amendment claim against CO Harris as a principal is dismissed with prejudice. The claims against CO Harris and CO Flynn for failure to intervene to prevent an Eighth Amendment violation by CO Weed may proceed. The Eighth Amendment claim  against CO Weed as a principal was not a subject of Defendants' summary judgment motion and may proceed.

**VI.  Orders**

It is hereby

**ORDERED** that Defendants' Motion for Summary Judgment is **granted** to the extent that all claims against CHO Esgrow, Inv. Bigit, and Director Selsky are dismissed with prejudice. It is further

-41-

**ORDERED** that Defendants' Motion for Summary Judgment is **granted** to the extent that the Eighth Amendment claim against CO Harris as a principal is dismissed with prejudice. It is further

**ORDERED** that Defendants' Motion for Summary Judgment is **denied** to the extent that the Eighth Amendment claim based on the failure of CO Harris and CO Flynn to intervene to prevent an excessive use of force may proceed. It is further

**ORDERED** that **Frank Bigit, Donald Selsky, Michael Sheahan,** and **James Esgrow** are **terminated** as parties to this action. The Clerk of Court is requested to modify the docket accordingly.

**ALL OF THE ABOVE IS SO ORDERED.**


                                        S/Michael A. Telesca

                              _____
                                        HONORABLE MICHAEL A. TELESCA
                                        United States District Judge

DATED:      July 1, 2013
            Rochester, New York

-42-